# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Case No. 3:09-00021 |
| ) | Judge Trauger |
| v. ) | |
| ) | |
| JERRY T. BUFORD, ) | |
| ) | |
| ) | |

## MEMORANDUM AND ORDER

Pending before the court is defendant Jerry T. Buford's Motion to Suppress Evidence and Statements Obtained in Violation of the Fourth Amendment. (Docket No. 33.) For the reasons discussed herein, the defendant's motion will be granted.

## FACTUAL AND PROCEDURAL BACKGROUND

The relevant facts are not in dispute and are stated in the defendant's motion and in the Government's response. (Docket Nos. 33 and 36.) Shortly after midnight on May 18, 2008, the defendant was driving a 2000 Chevrolet Blazer in downtown Nashville, Tennessee. Metropolitan Nashville police officer Paul Smith, on patrol in the area, saw the Blazer in traffic, and, despite the fact that no traffic violation had occurred, "ran the tag" on the Blazer. Smith's computer search revealed that there was an outstanding arrest warrant for the owner of the vehicle (the defendant) based on a probation violation. Seeing this, Smith pulled the Blazer over and, after a brief, unremarkable conversation with the defendant, Smith took the defendant into custody on the probation violation warrant, handcuffed him, and placed him in the back of his locked patrol car. A passenger in the Blazer was also removed from the car.

1

After both individuals were secured and were well away from the Blazer[1], additional officers (now on the scene) conducted a search of the Blazer, locating a .45 caliber pistol under a front seat of the vehicle. The passenger denied any knowledge of the gun, was released, and drove the Blazer away from the scene. The defendant, on the other hand, was advised of his *Miranda* rights, and, after those rights were read, stated that he "didn't think [he] should say anything." The defendant was transported to the Davidson County Criminal Justice Center (DCCJC), where he was to be booked on the probation violation. As the defendant and the officers were approaching the DCCJC, the defendant, in conjunction with a conversation about contraband, apparently volunteered that the gun "was in the car [be]cause people try to rob me for the truck." The defendant was charged in this case with unlawful possession of the gun.

On May 6, 2009, the defendant moved to suppress the gun (and his statement about it) in light of the Supreme Court's decision in *Arizona v. Gant*, 129 S. Ct. 1710 (April 21, 2009). In that case, the Court concluded that "police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest. When these justifications are absent, a search of the arrestee's vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies." *Id.* at 1723-24. Arguing that the defendant, locked in the police car, was not within "reaching distance" of the passenger compartment of the Blazer and that it would be unreasonable for the officers to believe

---

[1] Although the Government conceded in its briefing that "the facts underpinning the search ... cannot be supported by '*Gant*' ... " (Docket No. 36 at 1), one of the arresting officers was called to testify at the suppression hearing "to make a record in case of an appeal." The officers' testimony varied slightly from the facts already conceded by the Government, but the Government reaffirmed in open court that the search in this case was impermissible under *Gant*.

that the Blazer contained evidence of a probation violation the basis for which the officers admittedly did not know, the defendant claimed that the officers' search of the Blazer was unreasonable in light of *Gant* and that the gun (and the defendant's subsequent statement about the gun) should be suppressed. (Docket No. 33 at 4.)

In response, the Government concedes that *Gant* is essentially "on all fours" with this case and that, "for purposes of the facts of this specific case, the search incident to the arrest did not fall within the parameters elaborated in *Gant*." (Docket No. 36 at 4.) Further, the Government concedes that *Gant* "applies to all cases that are not yet final, and thus must be considered by this Court in determining whether the search at issue was lawful." (*Id.* citing *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987)). That said, the Government argues that "the question whether a search was unlawful, however, is distinct from the question whether the exclusionary rule requires suppression of evidence obtained during the search." (*Id.*) Indeed, the Government argues that the "good faith" exception, as stated in, among others, *Herring v. United States*, 129 S.Ct. 695 (2009) and *United States v. Leon*, 468 U.S. 897 (1984), dictates that, even though the search was a violation of the defendant's constitutional rights, the gun (and subsequent statement about it) should not be suppressed under the exclusionary rule.

## ANALYSIS

As indicated above, the Government concedes that, under *Gant*, the search here was unreasonable, and that *Gant* applies in this case, even though *Gant* was decided after the search. (Docket No. 45 at 4.) The Government argues, however, that the "good faith" exception, as described in *Herring* and *Leon*, operates to permit admission of the gun and the statement, in spite of the constitutional violation.

Earlier this year, the Supreme Court clarified the relationship between a Fourth

3

Amendment violation and the exclusionary rule, stating that "[t]he fact that a Fourth Amendment violation occurred – i.e., that a search or arrest was unreasonable – does not necessarily mean that the exclusionary rule applies. Indeed, exclusion has always been our last resort." *Herring*, 129 S.Ct. at 700 (internal quotation omitted). The Court went on to state that, before exclusion is warranted, the court should be satisfied that the officers at issue "had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment." *Id.* at 701. Therefore, where, in conjunction with justifying their search, the officers, at the time of the search, in good faith, relied on a later invalidated proposition or document (*e.g.*, a warrant improperly held open due to a record-keeping error, a subsequently invalidated state statute, or a warrant that subsequently turns out not to be supported by probable cause), the Court has determined that suppression may not be appropriate, largely because the aims of deterring officer misconduct, embodied in the exclusionary rule, are not served by excluding evidence that was obtained by officers acting in good faith. *See Id; United States v. Leon*, 468 U.S. 897 (1984); *Illinois v. Krull*, 480 U.S. 340, 349-50 (1987)

Here, the Government asks the court to extend the "good faith" exception into less well-charted territory, that is, apply the "good faith" exception where the officers were allegedly relying on a body of case law generated by the U.S. Supreme Court. By way of a brief review, as the Court stated in *Gant*, at the time of the search in this case, the Supreme Court's decision in *New York v. Belton*, 453 U.S. 454 (1981) was "widely understood to allow a vehicle search incident to the arrest of a recent occupant even if there is no possibility the arrestee could gain access to the vehicle at the time of the search." *Gant*, 129 S. Ct at 1718. Indeed, just three months before the arrest in this case, the Sixth Circuit, in a case involving an automobile search that occurred while the arrestee was in custody in a police car, relying on the *Belton* line of cases,

4

concluded that "this court has made clear that, under prevailing Supreme Court precedent, the search incident to arrest authority applies even where an item is no longer accessible to the defendant at the time of the search, so long as the defendant had the item within his immediate control near the time of his arrest." *United States v. Nichols*, 512 F.3d 789, 797 (6th Cir. 2008) (internal quotation and citation omitted). That is, the Sixth Circuit concluded that the search of an automobile, incident to the arrest of a recent occupant, was permissible, even if the recent occupant was nowhere near the car. *Id.* Therefore, at the time of the arrest in this case, a reasonable officer would have concluded that the search of the automobile in this case was permissible, even though the defendant was already in custody at the time of the search.

This, however, is not the end of the inquiry. As the Government recognizes, there is considerable "tension between the good faith exception and retroactivity doctrine." (Docket No. 45 at 5.) It is well settled that "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past." *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987). Therefore, as the Government recognizes, even to the extent that the *Gant* decision is a "clear break" from the *Belton* past, the rule in *Gant* applies with the same force as if *Gant* were on the books at the time of the defendant's arrest. (Docket No. 45 at 4.) This retroactivity rule is consistent with "basic norms of constitutional adjudication" and the "integrity of judicial review," which requires that courts treat similarly situated defendants the same. *Griffith*, 479 U.S. at 323.

The Government contends that the "retroactivity doctrine" co-exists with the "good faith" exception, because "it appears that the law applies retroactively but the remedy applies

5

prospectively, so long as the officer reasonably relied on the law at the time." (Docket No. 45 at 5.) The Government provides no case support for this proposition, presumably because the proposition is unsupported.[2] Indeed, the basic problem with the Government's argument is that it takes the broad language of *Herring*, which arose in a completely different context, and attempts to apply it here. In so doing, the Government's argument fails to recognize that, despite the broad language in *Herring*, the Supreme Court has not indicated that the good faith exception should be extended into the realm of Supreme Court jurisprudence and the general area protected by the "retroactivity doctrine."

Indeed, such an extension of the "good faith" exception would lead to perverse results. For instance, under the Government's argument, there is no basis for distinguishing the petitioner in the "new rule" case from similarly situated defendants whose cases were proceeding when the new rule was announced. That is, from the Government's view of the "good faith" exception, there is no distinction between Gant and the defendant here, because both arresting officers were operating in a *Belton* world. Under the Government's argument, then, Gant himself would only be entitled to the rather hollow relief of knowing that the search he was subjected to was a violation of his constitutional rights; that is, he would not be entitled to suppression of the evidence because the evidence was obtained in a good faith reliance on *Belton*. Anyone similarly situated to Gant

---

[2] The Government cites two cases for the proposition that "the good faith exception applies" in the context of "good faith reliance on court decisions." (Docket No. 45 at 5 citing *U.S. v. Butz*, 982 F.2d 1378 (9th Cir. 1993) and *U.S. v. Richardson*, 848 F.2d 509 (5th Cir. 1988)). Neither of these cases supports the general proposition posed by the Government. The *Butz* case involved an intervening change in state law, and the *Richardson* case involved an intervening change in Fifth Circuit law, on a technical issue as to where the Fifth Circuit concluded the "functional equivalent" of the border to be. *Richardson*, 848 F.2d at 511. Neither case considers the interplay between the retroactivity doctrine as applied to Supreme Court jurisprudence and the good faith exception, which is the core issue here.

6

(such as the defendant) who was unfortunate enough to be arrested pre-*Gant* would likewise receive the same hollow relief. Anyone similarly situated to Gant, however, who was arrested subsequent to the *Gant* decision would be entitled to suppression of the evidence because the *Gant* decision would eliminate the good faith argument. Therefore, the individual (Gant) who successfully convinced the Court that his Fourth Amendment rights had been violated would run the risk of criminal penalty, while subsequent defendants might go free, despite being subject to identical intrusions on privacy. Indeed, discussing a defendant similarly situated to the one in this case, one court noted, "[t]o say that an exception exists under the *Leon* rule to the application of [a] United States Supreme Court[] holding ... which would permit the principle of the [] holding to be ignored [in a case subsequent to the holding] ... to Defendant's prejudice, creates logical and rationalogical anomalies in implementation of Fourth Amendment doctrine of a decidedly perverse effect." *U.S. v. Holmes*, 175 F. Supp. 2d 62 n. 6 (D. Me. 2001) (noting the conundrum but not resolving the issue).

Therefore, whatever the broad language of *Herring* may be, the result proffered by the Government cannot be the result intended by that case, as it is inconsistent with the "basic norms of constitutional adjudication" discussed above. *Griffith*, 479 U.S. at 323. The fact that the "good faith" exception was not discussed in *Gant* or in the few cases (involving pre-*Gant* searches) that have applied *Gant* further indicates that there is no judicial momentum to extend the "good faith" exception to this problematic point. *See U.S. v. Mullaney*, 2009 WL 1474305, *3 (D. Idaho May 27, 2009); *Guzman v. City of Chicago*, 565 F.3d 393, 399 (7th Cir. 2009) (noting that, despite cases like *Herring*, the exclusionary rule is not on "life support" in light of *Gant*).

Finally, the court obviously disagrees with the Government's argument that this "reading

7

of the law would, in effect, eliminate the good faith doctrine." (Docket No. 45 at 5.) The good faith doctrine, as expressed in *Leon*, *Krull*, and *Herring* counsels against suppression where an officer, in good faith, has conducted an unconstitutional search relying on an invalid document (such as a warrant) or a subsequently overturned state statute. These cases have not gone so far as to extend the doctrine to reliance on decisions of the United States Supreme Court that were reversed or overturned while the defendant's case was on review. Such an extension is without logical support and would create, as discussed above, a series of perverse and unwelcome problems. Therefore, as the "good faith" exception cannot apply in this circumstance, the court will grant the defendant's motion and order the gun suppressed. In light of this conclusion, the defendant's statement about the gun, which would not have been made unless the defendant was subject to an unconstitutional search, is a "fruit of the poisonous tree" and will also be suppressed. *See Hudson v. Michigan*, 547 U.S. 586, 592 (2006) (citing *Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963).

For the reasons discussed above, the defendant's Motion to Suppress Evidence and Statements (Docket No. 33) is **GRANTED**.

It is so **ORDERED**.

Enter this 11th day of June 2009.

ALETA A. TRAUGER
United States District Judge